UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KENNETH D. C.,

                Plaintiff,

v.

ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 22-cv-05326-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for disability insurance benefits ("DIB"). Plaintiff filed his application on April 11, 2019, alleging a disability onset date of January 22, 2016. AR 16, 101–02. After a hearing on October 14, 2021 (AR 34–78), Administrative Law Judge ("ALJ") Allen Erickson issued a decision finding plaintiff not disabled from his alleged onset date through June 30, 2017, plaintiff's date last insured. AR 13–33. The Appeals Council denied review of the ALJ's decision. AR 1–6.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding him not disabled. Dkt. 4, Complaint.

I.    ISSUES FOR REVIEW

A.  Whether the ALJ Erred in Evaluating Medical Opinion Evidence

1

B. Whether the ALJ Erred in Evaluating Plaintiff's Subjective Symptom Testimony

C. Whether the ALJ Erred in Plaintiff's Residual Functional Capacity ("RFC") Assessment

## II.  DISCUSSION

### A. Legal Framework

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

As an initial matter, plaintiff contends, and the Commissioner concedes, the ALJ *de facto* reopened plaintiff's May 2017 and April 2018 disability claims. Dkt. No. 10 at 3; 11 at 1–2. The Court thus accepts that the ALJ *de facto* reopened plaintiff's previous applications.

### B. Whether the ALJ Erred in Evaluating Medical Opinion Evidence

Plaintiff assigns error to the ALJ's evaluation of the medical opinions of (1) Dr. Meiss, (2) Dr. Staley, (3) Dr. Regets, and (4) the Department of the Veterans Affairs. Dkt. 10 at 3–10.

The ALJ found that plaintiff had the following severe impairments: "post-traumatic stress disorder, major depressive disorder, and migraine headaches." AR 19. Based on the ALJ's review of the record, they found plaintiff's RFC was: "a full range of work at all exertional levels" but with some nonexertional limitations – he was able understand, remember, and apply detailed but not complex instructions, and to perform predictable tasks. He was not able to work in a fast-paced, production-type environment. He could be exposed to occasional workplace changes. He could have only occasional interaction with the general public and with coworkers. AR 22. These were based on the questions and answers with the Vocational Expert (V.E.) during the administrative hearing. AR 70–71.

Under the regulations applicable to this case (plaintiff filed his claim on April 11, 2019, AR 16, 101), the ALJ must "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions" by considering their supportability, consistency, relationship with the claimant, specialization, and other factors, with supportability and consistency being the most important factors. 20 C.F.R. § § 404.1520c(b)(2), 404.1520c(c). Further, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022).

1. Dr. Meiss

3

Dr. Peter Meiss completed a psychiatric evaluation of plaintiff in May 2017 by reviewing plaintiff's records and conducting a mental status exam. AR 1591–95. Based on plaintiff's performance on his cognitive exam, Dr. Meiss opined plaintiff's ability to perform simple and repetitive, as well as detailed and complex tasks, is poor. AR 1594. Dr. Meiss further opined that based on plaintiff's poor activities of daily living and performance on the cognitive exam, plaintiff's ability to "perform work activities reliably and efficiently without special or additional instructions is very poor." *Id*.

Dr. Meiss also opined that based on plaintiff's tendency to isolate himself in his room, his ability to maintain regular attendance in the workplace is "poor," and that based on plaintiff's interpersonal presentation and stated interpersonal difficulty, plaintiff's ability to interact with coworkers and the public, and ability to adapt to usual workplace stresses is "poor to very poor." *Id*.

The ALJ found that while Dr. Meiss supported his opinion with objective findings, it was "not persuasive" because it "was based primarily on information from [plaintiff] that . . . was at odds with [plaintiff's] own statements to his own doctors and in his Function Report." AR 26. How consistent a medical opinion is with the evidence from other medical sources and nonmedical sources, including in the claimant, is one of the most important factors an ALJ must consider. *See* 20 C.F.R. §§ 404.1502(e)(1), 404.1520c(c)(2).

Here, the ALJ correctly points out that many of plaintiff's statements to Dr. Meiss differ from plaintiff's reports throughout the record, as further discussed below, *infra*, Section C. Yet in forming his opinion, Dr. Meiss also reviewed plaintiff's work assessment, and VA treatment records. AR 1591. Dr. Meiss conducted a cognitive

4

exam, in addition to considering plaintiff's statements. AR 1591, 1593. Dr. Meiss explained in the "Medical Source Statement" that his opinions were "based on the claimant's psychiatric condition only as assessed by the information available today, *including* the claimant's mental status exam." *See* AR 1594 (emphasis added). Because Dr. Meiss's opinion was also based on Dr. Meiss's review of plaintiff's records and plaintiff's mental exam, the ALJ erred in discounting it for its primary reliance on plaintiff's statements.

2.  Dr. Staley

Dr. Norman Staley reviewed plaintiff's medical records in August 2020 and rated plaintiff's exertional limitations. AR 108–10. He explained that based on a "[p]ossible meniscus tear" on plaintiff's left knee, plaintiff can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and is unlimited in pushing or pulling. AR 108–09. The ALJ found Dr. Staley's opinion "not persuasive," because of its (1) lack of supportability, (2) its inconsistency with other objective medical evidence, and (3) its inconsistency with plaintiff's activities. AR 25–26.

With respect to the ALJ's first reason, a medical opinion's supportability is measured by the relevance of the objective medical evidence and supporting explanations provided by the medical source. 20 C.F.R. § 404.1520c(c)(1). Here, the ALJ pointed out that Dr. Staley's exertional findings were solely based on a "possible meniscus tear." AR 25, 109. Given that Dr. Staley provided no further objective medical evidence or supporting explanations to support his findings, the ALJ reasonably discounted his opinion based on its lack of supportability.

      With respect to the ALJ's second reason, a medical opinion's consistency is measured by how consistent it is with evidence from other medical sources and nonmedical sources in the claim. *See* 20 C.F.R. § 404.1520c(c)(2). Here, the ALJ first identified several records showing normal findings as to plaintiff's knee. AR 25–26. Further, the ALJ cited an assessment about plaintiff's knee stating plaintiff "does not or has never had a meniscus condition". *See* AR 518, 1897. The objective evidence identified by the ALJ substantially supports the ALJ's findings, therefore in discounting Dr. Staley's opinion based on its inconsistency with the objective medical evidence, the ALJ did not err.

      Finally, the ALJ also cited to records showing plaintiff engaged in running, but those records also state plaintiff experienced intermittent pain, thus the Court cannot confidently say that this was inconsistent with Dr. Staley's findings. *See* AR 1605. However, because the ALJ provided at least one valid reason, supported by substantial evidence, to discount Dr. Staley's opinion, any erroneous reasons offered by the ALJ are deemed harmless. *See Carmickle*, 533 F.3d at 1162 (including an erroneous reason among other reasons is at most harmless error where an ALJ provides other reasons that are supported by substantial evidence).

      3.  Dr. Regets

      Dr. Michael Regets reviewed plaintiff's record in August 2020 and opined that plaintiff is, at most, moderately limited in his ability to sustain concentration and persistence. AR 110–11. Specifically, Dr. Regets explained that while plaintiff's concentration and persistence is "diminished at times" by his symptoms, he is able to "maintain attention/concentration sufficient to complete routine tasks over a normal 8-

hour workday with customary breaks." AR 111. Dr. Regets also opined that plaintiff is, at most, moderately limited his ability to socially interact, and explained that while his public contact must be limited, he is capable of working with a few co-workers and has no "significant problems taking directions from supervisors." AR 111.

Plaintiff assigns error to the ALJ's finding that Dr. Regets's opinion is "somewhat persuasive," and argues it is lacking in supportability and consistency because it "does *not* account for [plaintiff's] many severe mental health symptoms." Dkt. 10 at 9.

In finding Dr. Regets' opinion "somewhat persuasive," the ALJ explained it was consistent with plaintiff's "self-isolation, irritability, and poor concentration," and the objective medical evidence demonstrating his mood and sadness, which Dr. Regets referenced in his opinion. AR 26. The ALJ's finding is supported by the record, as the cited evidence shows plaintiff presented with an anxious or bad mood, was tearful, or distressed, and that he isolated himself from others. AR 104–05, 1383–84, 1591. Thus, the Court cannot say the ALJ unreasonably found Dr. Regets's opinion persuasive.

4. VA Rating Decisions

Plaintiff also assigns error to the ALJ's evaluation of the rating decision of the Department of Veterans Affairs ("VA"). Dkt. 10 at 9–10; AR 280–81, 439, 443–46.

Plaintiff first argues the ALJ erred in declining to find his migraines as a severe impairment. Dkt. 10 at 9. But contrary to plaintiff's assertion, the ALJ did consider this symptom; the ALJ found at step two of the sequential evaluation process that his migraine was a severe impairment. *See* AR 19–20.

Plaintiff also seems to argue the ALJ erred in his RFC assessment by failing to consider the VA's rating decision. Dkt. 10 at 9–10. But as the Commissioner points out,

7

under the new regulations, the ALJ is not required to provide any analysis in his or her decision regarding any disability decisions made by other governmental agencies, including the VA, as they are "inherently neither valuable nor persuasive to issue of whether [a claimant] is disabled or blind under the Act." See 20 C.F.R. §§ 404.1504, 404.1520b(c)(1).

### C.  Whether the ALJ Erred in Evaluating Plaintiff's Subjective Symptom Testimony

Plaintiff assigns error to the ALJ's evaluation of his symptom testimony. Dkt. 10, at 10–18.

Plaintiff testified that he experienced symptoms of conditions of PTSD and anxiety, preventing him from being able to effectively interact with other persons. AR 47, 66, 227, 237. Plaintiff testified that although he is able to fall asleep, he has difficulties staying asleep and going back to sleep, and often only gets three to four hours of sleep. AR 65. Plaintiff also testified to having migraines every day, which inhibits him from being able to do certain things. AR 47, 50–51, 61. As for his physical symptoms, plaintiff testified to knee pain, for which he uses a knee brace, takes medication, and obtains physical therapy; and he explained that the medication and other supports do not help. AR 59. Plaintiff also testified he has flat feet, which make it feel like his feet are throbbing, and that his prescribed orthotics do not help. AR 57–58.

When asked about his living situation during the relevant period, plaintiff testified he was able to drive if needed and clothe and feed his (then infant) child, though his family visited to help with groceries and to take his child to appointments. AR 54–56. He stated that he lacked patience and would feel "road rage" if he drove, so his spouse

would drive instead. AR 68. He would retreat to the garage, and often started to cry but would not be able to stop crying. AR 69.

The ALJ found that while plaintiff's severe impairments "could reasonably be expected to cause" plaintiff's alleged symptoms, plaintiff's statements as to the intensity, persistence and limiting effects of those symptoms "are not entirely consistent with the medical evidence and other evidence in the record." AR 23. Specifically, the ALJ discounted plaintiff's testimony and relied on: (1) plaintiff's treatment history, (2) inconsistency with plaintiff's activities of daily living, (3) inconsistency with the objective medical evidence, and (4) plaintiff's own inconsistent statements. AR 24–25.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a plaintiff's credibility, the ALJ must determine whether plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ's rejection of plaintiff's testimony regarding the severity of his symptoms must be supported by substantial evidence in the record and based on specific, clear and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

With respect to the ALJ's first reason, a claimant's failure to seek treatment can undermine a claimant's testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("an 'unexplained, or inadequately explained, failure to seek treatment' may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies.").

Here, the ALJ specifically discounted plaintiff's testimony regarding his mental limitations because he refused therapy for his PTSD (AR 1387) and plaintiff stopped going to therapy for his alcohol abuse after three sessions. *See* AR 1509, 1513, 1519, 1537, 1652. But when considering a claimant's treatment history, the ALJ may also consider why an individual "may not understand the appropriate treatment for or the need for consistent treatment of his or her impairment." *See* Social Security Ruling ("SSR") 16-3p. Here, the ALJ's characterization of the record is not entirely accurate, as it shows plaintiff's refusal to engage in therapy for his PTSD was due to his reluctance "to think about what happened in combat" and because he did not think "it would be helpful to relive it again and again." *See* AR 1387.

Furthermore, the ALJ did not explain how plaintiff's decision to not resume alcohol abuse therapy necessarily discounts plaintiff's testimony regarding his mental limitations, given that alcohol abuse was not one of the symptoms plaintiff discussed during his testimony. *See* AR 49–50. Thus, in discounting plaintiff's testimony regarding his mental limitations based on his treatment history, the ALJ erred.

The ALJ also discounted plaintiff's testimony regarding migraines because they were managed with conservative treatment. While improvement with conservative treatment is a valid reason to discount a claimant's testimony, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008), the ALJ's reasoning is not supported by substantial evidence. AR 25.

The evidence cited by the ALJ includes only a treatment note stating plaintiff found putting a warm cloth over his face, drinking water, and laying down in a quiet place helpful for his headache. AR 2045. The other cited treatment notes show plaintiff

was continuously prescribed medication for his migraines, but do not indicate whether plaintiff responded favorably to the medication. AR 1367, 1380, 1434, 1605. As none of the treatment notes reasonably show that plaintiff's migraines improved to a point that they were inconsistent with plaintiff's testimony, in discounting plaintiff's testimony regarding his migraines, the ALJ also erred.

With respect to the ALJ's second reason, an ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ first cited plaintiff's ability to attend school, but the records show plaintiff only left the house once a week to do so and did the rest of his school work at home. *See* AR 24, 1360, 1383, 1537. It is also unclear whether any of plaintiff's school work translated to any skills in a work setting, therefore the Court cannot confidently say the ALJ reasonably discounted plaintiff's symptoms based on school attendance. *See Kish v. Colvin*, 552 F. App'x 650, 651 (9th Cir. 2014) (finding that "[s]chool attendance is often not as physically taxing as full-time employment).

The ALJ next cited plaintiff's ability to live independently and care for his son. AR 24–25, 225–31, 237–44, 1383. The record shows plaintiff was able to attend his appointments and at times, he described himself as "primary caregiver" of his son. *See* AR 1365, 1537, 1383. But none of these activities necessarily contradict plaintiff's testimony. During the hearing, plaintiff explained he was able to take care of his child and he could drive if needed. AR 55–56. Finally, the ALJ cited plaintiff's ability to get back into running, but as previously discussed, the record shows plaintiff still experienced pain when doing so. *See* AR 1605, 1544. In sum, the activities identified by

the ALJ neither contradict plaintiff's statements about his symptoms nor do they transfer to skills in a work setting, therefore in discounting plaintiff's testimony based on his activities of daily living, the ALJ erred.

With respect to the ALJ's third reason, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995)). Here, the ALJ cited plaintiff's examinations showing he was cooperative, alert, and attentive with normal speech, logical thought process, and good judgment. AR 25 (citing AR 1358-59, 1383-84).

But the cited evidence shows plaintiff was also depressed, anxious, and had trouble sleeping. AR 1383–84. The ALJ explained that in plaintiff's other appointments, there were no observations of significant mental deficits. AR 25. On the other hand, the ALJ points out plaintiff's primary purpose for these appointments was to assess his knee pain, get fitted for prosthetics, and keloid evaluation. Therefore it would not be surprising that such appointments for physical concerns (rather than psychological or psychiatric conditions) included no observations or assessments about plaintiff's mental health. *See* AR 1345, 1362–63, 1605, 1644, 1653, 2172–76. Because none of the objective medical evidence cited by the ALJ actually undermined plaintiff's statements, the ALJ erred in discounting plaintiff's testimony.

Regarding the ALJ's fourth reason, an "ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *See Molina*, 674 F.3d at 1112. Here, the ALJ explained that plaintiff's statements to Dr. Meiss during his 2017 evaluation – about his alcohol use, history of suicide attempts,

and activities of daily living – differed from plaintiff's other reports throughout the record. AR 25. For example, the ALJ compared plaintiff's report of "drinking a fifth of hard liquor daily" in May 2017 to Dr. Meiss (AR 1591-1592) with plaintiff's reports of continued sobriety "since November 2015" to other therapists during 2016. AR 1346, 1509, 1513, 1519, 1617, 1637, 1652.

The ALJ also pointed out that plaintiff's statements that he was suicidal and endorsed suicidal ideation are not reflected in plaintiff's other therapy notes, which show plaintiff reported no suicide ideation or attempts. *Compare* AR 1591 *with* AR 1387, 1921, 1923. Yet, plaintiff also stated to Dr. Meiss that "he's very reluctant to discuss his trauma history or his mental health history. . .he's been through it several times before and it's very painful for him to discuss." AR 1593. The difference between plaintiff's statements in May 2017 to a board-certified psychiatrist – Dr. Meiss – and his reports to other care providers throughout the record (e.g. AR 1929, notation from clinical psychologist in 2016 that "[t]raumas aboard ship, he did not discuss today", last drink was in November 2015 but "smokes cannabis daily to help him sleep. . .cannabis really doesn't help") are understandable given the statements about how plaintiff did not feel safe talking about the horrible circumstances of his friend's death he directly observed – when he described his military service to Dr. Meiss (AR 1591) – his trauma, or PTSD, even during his one-on-one evaluation with Dr. Meiss. AR 1593. Plaintiff's statements about not abusing alcohol were made in 2016 (e.g., the therapist describes plaintiff's situation as "[a]lcohol use disorder, in early remission", AR 1923); this would indicate he was not abusing alcohol at that time, but later when he met with Dr. Meiss, the situation had changed.

The ALJ also compared plaintiff's statements about staying in his room all day and being limited to minimal chores – with plaintiff's report, completed two months before Dr. Meiss's evaluation, that he does "everything" for his son, drives, uses public transportation, manages finances, and performs household chores. Yet plaintiff reported to Dr. Meiss during the evaluation in May 2017 that he avoids speaking with people, tends to stay in his room, stays in bed for much of the day, and does not complete any chores. In a report of his daily activities in 2020, plaintiff reported that his partner did the chores and took care of the family but he was not able to do so. *Compare* AR 226–27, 238, 1593. But mental health symptoms may wax and wane, so this is not an inconsistency, considering the fact that plaintiff was struggling with PTSD and depression. *See, Diedrich v. Berryhill,* 874 F.3d 634, 642-643 (9th Cir. 2017) (holding the ALJ erred by rejecting plaintiff's testimony about symptoms and activities of daily living, observing that mental health symptoms may wax and wane; and even if the plaintiff is able to perform some of the daily activities of living, they are "likely not doing them with the consistency and persistence that a work environment requires); *Garrison v. Colvin,* 759 F.3d 995, 1017 (9th Cir. 2014) ("it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment") .

D. Whether the ALJ Properly Assessed Plaintiff's RFC

Plaintiff assigns error to the ALJ's RFC assessment. Dkt. 10 at 18–19.

The Court has found that the ALJ erred in evaluating Dr. Meiss's medical opinion, and also in rejecting plaintiff's testimony about symptoms.

If the errors of the ALJ result in an RFC that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Embrey v. Bowen,*

849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished). An error that is inconsequential to the non-disability determination is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)).

A proper evaluation of Dr. Meiss's medical opinion, and plaintiff's statements about symptoms and work-related limitations, could potentially change the questions that the ALJ would ask of the Vocational Expert, as well as the V.E.'s response to those questions; and it would potentially result in a different RFC assessment. Therefore, the ALJ's error was harmful and the ALJ's RFC is not supported by substantial evidence. *Embrey v. Bowen,* 422-423.

## CONCLUSION

The Court concludes the ALJ improperly determined plaintiff to be not disabled, and the appropriate remedy is to reverse and remand for further proceedings.

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

Here, plaintiff asks that the Court remand for an award of benefits based on the ALJ's errors. Dkt. 10 at 19. The Court has found the ALJ harmfully erred in evaluating the medical opinion of Dr. Meiss, and by rejecting plaintiff's testimony. Accordingly, remand for further proceedings is the appropriate remedy.

Based on the foregoing discussion, the Court concludes the ALJ's decision finding plaintiff to be not disabled is not supported by substantial evidence, and the ALJ also committed legal error. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings. The Commissioner is instructed to conduct a de novo hearing, allowing plaintiff to present additional evidence; the Commissioner shall reevaluate Dr. Meiss's medical opinion, and also re-assess plaintiff's credibility; and the Commissioner is directed to properly consider the evidence in all relevant steps for the disability evaluation process.

Dated this 6th day of February, 2023.

Theresa L. Fricke
United States Magistrate Judge